IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 92-4486

JANE ALICE PSARIANOS, ET AL.,

Plaintiffs-Appellants,

versus

STANDARD MARINE, LTD., INC., ET AL.,

Defendants,

EAGLE TRANSPORT, LTD.,

Defendant-Third Party
Plaintiff-Appellant,

versus

UNITED KINGDOM MUTUAL STEAMSHIP ASSURANCE
ASSOCIATION (Bermuda), Limited, A/K/A
UNITED KINGDOM P&I CLUB,

Third Party Defendant-
Appellee.

Appeal from the United States District Court
for the Eastern District of Texas

(January 14, 1994)

Before POLITZ, Chief Judge, HIGGINBOTHAM, Circuit Judge, and
PICKERING[*], District Judge.

HIGGINBOTHAM, Circuit Judge:

---

[*] District Judge of the Southern District of Mississippi,
sitting by designation.

We hold that the victims of an accident on the high seas lack the requisite special relationship to proceed directly against the insurer of the parties at fault for causing the accident.

## I.

The M/V Thomas K sank in international waters on February 1, 1984. Plaintiffs, the surviving crew members and the survivors of the deceased crew members, brought personal injury and wrongful death actions in the United States District Court for the Eastern District of Texas against the vessel's owner, Eagle Transport Limited, Inc., its manager and operator, Standard Marine Ltd., the alleged alter ego of Eagle and Standard Marine, Peter Kikis, and the American Bureau of Shipping. After trial, a jury returned a verdict in favor of the plaintiffs in excess of $22,000,000. United Kingdom Mutual Steamship Assurance Association, the vessel's protection and indemnity insurer, declined to cover any liability. Eagle Transport, Standard Marine and Kikis instituted third party proceedings against the Assurance Association claiming breach of an insurance contract and seeking indemnification for the amount that they were required to pay to the plaintiffs. The district court then granted the Association's motion to compel arbitration as required by the insurance contract and in the interim stayed proceedings on the coverage issue.

While the arbitration was pending, the plaintiffs expressed their intention to initiate an action against the Association in Texas state court. The Association responded by requesting the district court to declare that plaintiffs had no claim against the

Association. The plaintiffs filed a counter-claim seeking a declaratory judgment that the insurance contract provided by the Association covered the liabilities of Eagle and that the plaintiffs were entitled to proceed directly against the Association.

The arbitration panel found that Eagle had not complied with the insurance contract under the indemnity policy. The panel also found that the Association's obligation would arise only when Eagle paid, which Eagle has yet to do. As a result, Eagle could not recover from the Association. The district court confirmed the arbitral award and dismissed plaintiffs' claim against the Association.

Plaintiffs challenge the district court's exercise of jurisdiction over their claim, the district court's declaratory judgment against them, and the underlying arbitral award. We find that the district court did not abuse its discretion in exercising jurisdiction over plaintiffs' claim, that the district court's declaratory judgment was sound, and that plaintiffs lack standing to attack the arbitral award.

## II.

We first identify the proper appellants. The Association has moved to dismiss Eagle's appeal. Eagle has not filed a brief on appeal, or adopted plaintiffs' arguments. We have no reason to believe that Eagle wishes to pursue this matter or, if it does, that it would pursue it in the way the plaintiffs have chosen. We dismiss Eagle's appeal. See Rule 31(c) FRAP.

3

III.

Plaintiffs first argue that the district court should not have entertained the Association's motion for a declaratory judgment. When the Association moved for declaratory judgment, the plaintiffs had already indicated their intention to proceed directly against the Association in state court.[1] Plaintiffs argue that the district court should not have allowed the Association to deny the plaintiffs the choice of forum in which to litigate their claims.

We must determine whether the district court abused its discretion in hearing the declaratory judgment action. Sandefer Oil & Gas, Inc. v. Duhon, 871 F.2d 526, 528 (5th Cir. 1989) (citing Mission Insurance Co. v. Puritan Fashions Corp., 706 F.2d 599, 601 & n.1 (5th Cir. 1983)) ("our review of the district court's exercise of discretion to hear a declaratory judgment action is limited to whether the court abused its discretion"). In particular, the abuse of discretion standard applies to the district court's decision whether to stay or dismiss a declaratory judgment suit in deference to a state court action. Magnolia Marine Transport Co. v. Laplace Towing Corp., 964 F.2d 1571, 1581 (5th Cir. 1992).

A district court may refuse declaratory relief for one of several reasons: the matter may be before a state court capable of resolving all the issues between the parties; the declaratory

_____

[1]The plaintiffs notified the Association before filing suit in an effort to satisfy the requirements of the Texas Deceptive Trade Practices--Consumer Protection Act. See Business and Commercial Code of Texas, § 17.41 et seq (1993).

4

complaint may have anticipated another suit and may allow forum shopping; the complaint may allow the plaintiff to gain precedence in time or forum; or it may inconvenience the parties or the witnesses.  Id. (quoting Rowan Cos. v. Griffin, 876 F.2d 26, 29 (5th Cir. 1989)).

Plaintiffs originally filed suit in federal court.  The Association later filed its motion for summary judgment.  The plaintiffs filed a counter-claim in federal court and did not sue in state court.  Plaintiffs chose the district court, and we do not find that the district court abused its discretion in forcing plaintiffs to pursue all aspects of the case in a single forum.[2]

### III.

Second, plaintiffs claim that the district court erred by dismissing their claims against the Association.  They argue that the laws of both Britain and Texas provide them a cause of action against the Association.  They are mistaken on both counts.

Plaintiffs cite Morewitz v. West of England Ship Owners Mut. Protection & Indem. Ass'n, 896 F.2d 495 (11th Cir. 1990) as support for their claim that under English law they have a cause of action against the Association.  Plaintiffs argue that the court in Morewitz interpreted an English bankruptcy act, The Third Parties (Rights Against Insurers) Act of 1930, as creating for a party in a position to benefit from insurance a cause of action directly

---

[2]  Plaintiffs argue that the Burford abstention doctrine required the district court to decline to resolve this case.  See Burford v. Sun Oil Co., 319 U.S. 315 (1943).  We need not consider this argument as plaintiffs raise it for the first time in their reply brief.

5

against an insurance company once the insured has become bankrupt. The court did not have reason to recognize such a cause of action. Neither did it decide, as plaintiffs claim, that the direct action statute would defeat a defense based on the requirement that the insured pay its obligation before the insurer would become liable.[3] Rather the court of appeals held that the district court did not lack subject matter jurisdiction over the marine insurance claim simply because plaintiff based the claim on a direct action bankruptcy statute. Id. at 500.

The House of Lords in Firma C-Trade S.A. v. Newcastle P. & I. Ass'n, Lloyd's Rep. (Vol. 2) 191 (H.L. 1990), decided when a party in a position to recover from an insured may file suit directly against an insurer. When the terms of the insurance require the insured to pay its obligation before it may collect against the insurer, the House of Lords held, the insured must pay before any other party can sue on the contract. Id. at 197. Plaintiffs acknowledge that Eagle has yet to satisfy the judgment against it. Indeed, they pursue this suit against the Association precisely because Eagle has failed to pay. Because under English law, such payment is a "condition precedent" to a direct suit against the insurer, plaintiffs cannot proceed under English law.[4]

---

[3]Indeed, the Eleventh Circuit did not so much as conclude that the British direct action statute applied in the case before it rather than American state law. Id. at 499 n.5 ("the forum state's law may be the applicable law for purposes of applying any direct action statute") (citations omitted).

[4] For the Bankruptcy Act to have effect, the plaintiffs also have to establish that the insured was bankrupt or had been "wound up." Id. at 195. Plaintiffs claim Eagle is insolvent.

6

Plaintiffs' recourse to the laws of Texas is similarly unavailing. Plaintiffs correctly note that Texas allows an employee to sue directly a carrier of workers' compensation insurance. Aranda v. Insurance Co. of North America, 748 S.W.2d 210, 212 (Tex. 1988). This right is merely a special instance of the general rule that in Texas every insurer owes a duty "to deal fairly and in good faith with its insured in the processing and payment of claims." Id. As Texas courts treat the workers' compensation scheme of the state as a "three-party agreement" between the insurer, the employer, and the employee, this approach is unexceptional. Id. It casts little light on whether parties that stand to benefit from an insurance policy may proceed directly against the provider of the policy or whether only the insured or a third party beneficiary has that right.

We have already considered the contours of Texas law on this matter. In Warfield v. Fidelity and Deposit Co., 904 F.2d 322 (5th Cir. 1990), we addressed the circumstances in which a party that may benefit from insurance, but is not the insured or a third party beneficiary, may sue directly an insurance carrier. We held that Texas law requires "a direct and close relationship" between the party and the insurer. Id. at 326-27. Thus, for example, where an insurance company stated to a hospital that a prospective patient was covered by insurance, the hospital could then proceed directly

---

The Association suggests plaintiffs have offered no evidence to support this allegation. As plaintiffs have failed to meet the requirements to establish a claim under the Act, we need not and do not decide this issue.

7

against the insurance company in response to a denial of benefits to the patient.  Id. at 327 (citing Hermann Hops. v. National Standard Ins., 776 S.W.2d 249 (Tex. Ct. App. 1989)).  Plaintiffs do not claim any such special relationship with the Association. Thus, as this court noted in Warfield, a "line limiting liability must be drawn somewhere and the appellants fall outside of this line."  Id.

## IV.

Finally, plaintiffs challenge the district court's order enforcing the arbitral award in favor of the Association.  They have no standing to do so.  The relevant provisions of the Federal Arbitration Act, 9 U.S.C. §§ 201-08 (1993), do not confer such standing on parties not participating in arbitration. See 9 U.S.C. §208 (1993) (incorporating, inter alia, 9 U.S.C. §10); 9 U.S.C. §10 (1993) (allowing "order vacating" an arbitration award "upon application of any party to the arbitration") (emphasis added); McNair v. United States Postal Service, 768 F.2d 730 (5th Cir. 1985) (citing Acuff v. United Papermakers and Paperworkers, 404 F.2d 169, 171 n.2 (5th Cir. 1968)) (interpreting 9 U.S.C. §10 to afford standing to challenge arbitration only to parties that participated in arbitration).  Moreover, as we explained, the law does not provide plaintiffs an independent basis for suing the Association.  Warfield, 904 F.2d at 326-27.  Eagle, the other participant in arbitration, is not a party to this appeal.  Under these circumstances, plaintiffs lack standing to challenge the underlying arbitral award.

8

AFFIRMED.