**KPMG PEAT MARWICK, Plaintiff,**

v.

**TEXAS COMMERCE BANK,**
et al., Defendants.

**Civil Action No. H–96–1512.**

United States District Court,
S.D. Texas,
Houston Division.

Feb. 12, 1997.

J. Clifford Gunter, III, Bracewell & Patterson, Houston, TX, for Plaintiff.

Bill Jones, Cash, Jones & Springhetti, Houston, TX, for Texas Commerce Bank.

Manuel P. Lena, Jr.. Dept. of Justice, Dallas, TX, for the U.S.

Barry Allan Brown, Houston, TX, for Jerry W. Claiborne.

Paul D. Pruitt, Pruitt and Garland, Tyler, TX, for KS Financial Group, Inc.

Michael J. Durrschmidt, Hirsch & Westheimer, Houston, TX, for Houston National Bank.

Charles L. Black Aycock, Houston, TX, for Heritage Bank.

## MEMORANDUM AND ORDER

ATLAS, District Judge.

This is an interpleader action brought by Plaintiff KPMG Peat Marwick, L.L.P., ("KPMG") to determine creditor priority as to property of KPMG partner Jerry W. Claiborne ("Claiborne"). The property consists of finds in the registry of the Court as well as finds KPMG seeks to deposit in the Court's Registry, which monies were paid to Claiborne on June 30, 1996, as partner distributions and bonuses for 1996. Claiborne, the Internal Revenue Service ("IRS"), and Texas Commerce Bank, N.A. ("TCB") all claim rights to the finds. KPMG brought this action in state court, and the IRS subsequently removed to this Court. Since removal, Houston National Bank ("HNB"), KS Financial Group, Inc. ("KS"), and Heritage Bank ("Heritage") have all intervened in this action because they also assert claims against Claiborne's assets.

Pending before the Court is a Joint Motion for Payment of Funds to Defendant, United States of America [Doc. # 11].[1] In addition, TCB has filed a motion to dismiss cross-claims brought against it by Claiborne, as well as a request that this Court issue a judgment declaring the rights, status and other legal relations between TCB and other creditors of Claiborne as to the wages, salary, income and capital account of Claiborne held by KPMG. TCB's Motion to Dismiss,

---

1. This Motion was previously granted, but the decision subsequently was vacated. *See* Docs. # 15, 22.

Original Answer and Complaint for Declaratory Judgment [Doc. # 24].[2]

For reasons stated herein, the Court determines that the IRS is entitled to all of the funds currently in the registry .of the Court in partial satisfaction of its Notice of Lien filed on March 2, 1995. The Court further holds that Claiborne's crossclaim against TCB under the Fair Debt Collection Practices Act, as well as his crossclaim for declaratory judgment pursuant to 28 U.S.C. § 2201, are dismissed. All other claims and crossclaims between the parties are remanded to state court.

### FACTUAL BACKGROUND

On March 2, 1995, the IRS filed a Notice of Federal Tax Lien in the public records of Harris County, Texas for Claiborne's tax liability for tax years 1984, 1992, and 1993. *See* Notice of Federal Tax Lien, filed March 2, 1995 (Exhibit A to TCB's Response) ("1995 IRS Lien"). This lien is based upon assessments made in 1993 and 1994 totalling $182,-941.97.[3]

The IRS has filed several notices of levy based upon the 1995 IRS Lien, which calculate the "statutory additions" to the original amount of the lien. On December 12, 1995, the IRS served a "Notice of Levy" on KPMG to turn over all property or rights to property that KPMG has which belongs to Jerry and Mildred Claiborne, or that KPMG is obligated to pay the Claibornes, in the amount of $229,986.26.[4] On January 22, 1996, the IRS served a "Notice of Levy on Wages, Salary, and Other Income" upon KPMG for taxes owed by Claiborne, in the amount of $229,986.26.[5] Finally, on June 10, 1996, the IRS served an additional "Notice of Levy on Wages, Salary, and Other Income" on KPMG for the amount of $238,601.11.[6]

On February 8, 1996, the IRS issued a Release of Property from 'Levy. Release of Levy/Release of Property from Levy (Exhibit F to TCB's Response) ("Release of Property from Levy"). Pursuant to this Release, wages, salary and other income greater than $1,600.00 per month were released from the IRS levy.[7]

KPMG filed this interpleader action, as well as a request for a temporary restraining order and for injunctive relief on April 15, 1996, requesting that the court declare the rights of Claiborne, the United States, TCB,[8] and any other parties who claimed an interest in Claiborne's property in the custody of KPMG. *See* Original Petition. The IRS removed the action to federal court on May 10, 1996. HNB, KS, and Heritage have each

---

**2.** In addition, several parties have made general requests for attorneys' fees.

**3.** The IRS states that it filed a Notice of Lien in the public records of Washington County, Texas, based on the same tax years, on April 11, 1995. *See* United States' Response in Support of Joint Motion to Pay IRS [Doc. # 33], at 33. This Notice of Lien is not in the record and does not appear to be material to the case at bar.

**4.** *See* Notice of Levy, dated December 12, 1995 (Exhibit G to TCB's Response in Opposition to Joint Motion for Payment of Funds to Defendant, United States of America [Doc. # 32] ("TCB's Response")) ("December 1995 Notice of Levy").

**5.** *See* Notice of Levy on Wages, Salary, and Other Income (Exhibit H to TCB's Response) ("January 1996 Notice of Levy").

**6.** *See* Notice of Levy on Wages, Salary, and Other Income (Exhibit I to TCB's Response) ("June 1996 Notice of Levy").

**7.** Claiborne argues that he is entitled to keep his current wages, and that nothing more than the amount currently paid to the IRS properly can be withheld from him. *See* Letter from Barry A. Brown to J. Clifford Gunter, III, dated April 4, 1996 (Exhibit G to Petition for Relief in the Nature of Interpleader, Application for Temporary Restraining Order, and Application for Temporary and Permanent Injunction ("Original Petition") (attached to Notice of Removal [Doc. # 1] )).

**8.** TCB won a judgment against Claiborne in Texas courts on September 14, 1995, which was abstracted on November 7, 1995. On February 26, 1996, TCB served KPMG with a Restraining Notice to Garnishee, issued by New York state courts, requiring KPMG to pay TCB $213,142.99. See Restraining Notice to Garnishee, dated February 26, 1996 (Exhibit C to TCB's Response). On March 22, 1996, KPMG was served with a levy from a New York sheriff, demanding $228,-856.63 in favor of TCB. *See* Sheriff's Levy, dated March 22, 1996 (Exhibit E to Original Petition). On April 1, 1996, KPMG notified TCB of the IRS levy. *See* Letter from J. Clifford Gunter, III, to Dale Wainwright (Exhibit F to Original Petition).

intervened in order to assert their claims to Claiborne's current and future property.[9]

On August 19, 1996, the IRS filed a second Notice of Federal Tax Lien. Notice of Federal Tax Lien, filed August 19, 1996 (Exhibit B to TCB's Response) ("1996 IRS Lien"). This second lien is based upon Claiborne's liability for tax year 1995, and is for the amount of $162,247.88.

KPMG has deposited funds with the Court, which are amounts payable to Claiborne for the year ending June 30, 1996, totaling $201,354.68. On August 13, 1996, $90,000 was accepted into the Court's registry; an additional $60,000 was accepted into the Court's registry on October 24, 1996. *See* Docs. # 13, 43. On November 7, 1996, KPMG moved the Court for leave to tender an additional $51,354.68 into the Court's registry. Plaintiff's Motion for Leave to Tender Balance of Drawing Account Into Registry of the Court [Doc. # 52]. TCB opposes this motion because the movement of Claiborne's assets to Texas may prevent TCB from main-taining the lien position it claims from its New York levy. *See* Doc. # 53.

For the reasons stated below, the Court concludes that TCB's interest in the funds at issue is inferior to that of the IRS. Plaintiff's motion to tender an additional $51,354.68 into the Court's registry therefore is granted over TCB's objection.

## DISCUSSION

### A. *Creditor Priority*

■ The only pending motion on the issue of creditor priority is KPMG's Joint Motion for Payment of Funds to Defendant, United States of America [Doc. # 11] ("Motion for Payment to IRS").[10] Since the parties' numerous submissions regarding the Motion for Payment to IRS have provided the Court with a sufficient factual record and legal briefing, the Court will analyze the issue of creditor priority according to summary judgment standards, as though IRS had made a motion for summary judgment on the issue of its priority.[11]

9. HNB filed a financing statement based upon a $20,000 promissory note executed by Claiborne in its favor. *See* HNB's First Amended Petition in Intervention, Counter Claim Against KPMG Peat Marwick, L.L.P. and Cross Claim Against Jerry W. Claiborne and the United States of America [Doc. # 27] and exhibits thereto; *see also* HNB's Response in Opposition to the Joint Motion for Payment of Funds to Defendant, United States of America [Doc. # 18]. The Court notes that the date on the financing statement is illegible and, moreover, there appears to be some confusion in the record as to the date the document was filed. Nevertheless, all parties appear to agree that the financing statement was filed before the IRS filed its Notice of Lien on March 2, 1995. The precise date is not necessary to disposition by the Court of the issues that are ripe for decision.

KS prevailed in state court litigation against Claiborne, and the state court entered an Agreed Charging Order in KS' favor on January 23, 1996. *See* Plea in Intervention by KS Financial Group, Inc. [Doc. # 9].

Heritage prevailed against Claiborne in state court litigation, and an Agreed Charging Order was entered in Heritage's favor on February 7, 1996. *See* First Amended Intervening Complaint and Memorandum of Law in Favor of Heritage Bank [Doc. # 62]; *see also* Intervening Complaint of Heritage Bank [Doc. # 45].

10. TCB has requested that this Court issue a declaratory judgment declaring the rights, status and other legal relations between Claiborne's creditors, including the IRS, as to the wages, salary, income and capital account of Claiborne held by KPMG. *See* TCB's Motion to Dismiss, Original Answer and Complaint for Declaratory Judgment [Doc. # 24]. The Court declines to do so since the Declaratory Judgment Act prohibits federal courts from entertaining proceedings for declaratory relief in cases "with respect to Federal taxes." 28 U.S.C. § 2201(a); *Warren v. United States*, 874 F.2d 280 (5th Cir.1989).

11. Rule 56(c) "permits a court to grant summary judgment in favor of a party that did not request it." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 28 F.3d 1388, 1397 (5th Cir.1994) (quoting *NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 965 (5th Cir. 1991), *cert. denied*, 502 U.S. 1032, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992)). Before granting summary judgment *sua sponte*, a court must give ten (10) days notice to the adverse party, so that the party may come forward with all of its evidence. *Id.* (citing *Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 436–37 (5th Cir. 1992)). In this case, notice of a *sua sponte* summary judgment is not strictly necessary, since the parties have exhaustively argued and submitted legal briefing on the dispositive issues, demonstrating they seek a definitive ruling on their lien priority issues. *See Leatherman*, 28 F.3d at 1397. Nevertheless, the parties are permitted ten days to submit additional materials if this ruling raises factual or legal issues that have not been addressed in prior submissions, if they so choose.

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Bozé v. Branstetter,* 912 F.2d 801, 804 (5th Cir.1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. *Bozé,* 912 F.2d at 804 (citing *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986)). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g,* 70 F.3d 26 (5th Cir.1995).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. For any matter on which the nonmovant carries the burden of proof at trial, however, the movant may, by merely pointing to the absence of evidence supporting the essential elements of the nonmovant's case, shift to the nonmovant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact so as to warrant a trial. *Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 161 (5th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996) (citing *Engstrom v. First Nat'l Bank,* 47 F.3d 1459, 1462 (5th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 75, 133 L.Ed.2d 35 (1995)); *Transamerica Ins. Co. v. Avenell,* 66 F.3d 715, 718–19 (5th Cir.1995); *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Douglass v. United Servs. Auto. Ass'n,* 65 F.3d 452, 459 (5th Cir.1995), *revised on other grounds,* 79 F.3d 1415 (5th Cir.1996) (en banc); *Little,* 37 F.3d at 1075. In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *McCallum Highlands,* 66 F.3d at 92; *Little,* 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Little,* 37 F.3d at 1075 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552).

For the reasons stated herein, the Court determines that there is no genuine issue of material fact as to the IRS' priority over all other creditors until the 1995 IRS lien is fully satisfied.[12]

### 1. *Priority of the IRS under McDermott*

■ Under the Supreme Court's holding in *United States By and Through Internal Revenue Service v. McDermott,* 507 U.S. 447, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993), the IRS has priority over all private creditors in this case, including HNB whose security interest was recorded before the IRS filed its Notice of Lien. In *McDermott,* the IRS had assessed the McDermotts for unpaid federal taxes for the tax years 1977 to 1981, and filed its Notice of Lien on September 9, 1987, in Salt Lake County, Utah. By the terms of 26 U.S.C. §§ 6321–6323, this created a lien in favor of the United States on all of the McDermott's real and personal property, including after-acquired property. However, several months earlier, on July 6, 1987, Zions First National Bank, N.A., had recorded a state court judgment against the McDer-

---

12. The same legal principles will govern the parties' priorities as to the 1996 IRS lien. *See infra* at 631.

motts with the Salt Lake County Clerk, thereby creating a judgment lien against the McDermotts for all of the real property they owned or thereafter acquired during existence of the lien. On September 23, 1987, after both liens had been created, the McDermotts acquired title to certain real property in Salt Lake County, Utah.

The Supreme Court recognized the common law principle regarding lien priority that "first in time is the first in right." *McDermott*, 507 U.S. at 449, 113 S.Ct. at 1528 (citing *United States v. New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954)). However, the Court held that under its case law regarding federal tax liens, "a competing state lien [is] in existence for 'first in time' purposes only when it has been 'perfected' in the sense that 'the identity of the lienor, the property subject to the lien, and the amount of the lien are established." ' *Id.* at 449, 113 S.Ct. at 1528 (citing *New Britain*, 347 U.S. at 84, 74 S.Ct. at 369). Zion National Bank's lien therefore was not perfected until such time as the McDermotts

actually acquired the real property at issue, *i.e.,* September 23, 1987, since only at that time did the security interest attach to particular property. *Id.* at 451–52, 113 S.Ct. at 1528–29.[13] While the federal tax lien also did not attach until the same instant, the Supreme Court held that, under the language of 26 U.S.C. § 6323(a), "the filing of notice [of lien] renders the federal tax lien extant for 'first in time' priority purposes regardless of whether it has yet attached to identifiable property." *Id.* at 453, 113 S.Ct. at 1530.[14] The Court therefore concluded that the federal tax lien must be given priority. *See also Western Nat'l Bank v. United States,* 8 F.3d 253 (5th Cir.1993); *Texas Commerce Bank— Fort Worth, N.A. v. United States,* 896 F.2d 152, 161–62 (5th Cir.1990); *Rice Investment Co. v. United States,* 625 F.2d 565, 568 (5th Cir.1980).

The funds in the Court registry are payments owed by KPMG to Claiborne for the year ended June 30, 1996, which property of Claiborne's did not come into existence until June 30, 1996.[15] Since the IRS recorded its

---

**13.** The Internal Revenue Code provides that a security interest only exists if the relevant property is in existence. 26 U.S.C. § 6323(h)(1).

**14.** The Court further noted that a strong "first to record" presumption may be appropriate for statutes concerning private liens arising out of voluntary transactions, but that a federal tax lien was a different matter:

> The Government, by contrast, cannot indulge the luxury of declining to hold the taxpayer liable for his taxes; notice of a previously filed security agreement covering after-acquired property does not enable the Government to protect itself. A strong "first-to-record" presumption is particularly out of place under the present tax-lien statute, whose general rule is that the tax collector prevails even if he has not recorded at all.

*McDermott*, 507 U.S. at 455, 113 S.Ct. at 1531 (citing 26 U.S.C. §§ 6321 & 6322; *United States v. Snyder*, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705 (1893)).

**15.** The IRS' argument that the funds currently before the Court are Claiborne's property which came into existence on June 30, 1996, is unchallenged except for one argument by HNB. HNB contends that Claiborne's "partnership interest and distribution rights," which are a property interest under Texas law, *In re Hartman*, 102 B.R. 90, 94 & n. 8 (Bankr.N.D.Tex.1989) (citing Tex. Bus. & Com.Code § 9.106), were in existence and were perfected prior to the IRS' lien. *See* HNB's Post–Argument Brief [Doc. # 58], at

3. HNB's argument is not persuasive for several reasons.

> First, "distributions" and "distribution rights" are not interchangeable terms. HNB's argument that its financing statement grants it an interest in Claiborne's "distribution rights" is foreclosed by the statement's plain language. See HNB Financing Statement (Exhibit B to HNB's Response in Opposition to the Joint Motion for Payment of Funds to Defendant, United States of America [Doc. # 18] ). HNB's collateral was identified as "assignment of bonus and partner's bonus from KPMG–Peat Marwick payable to Jerry W. Claiborne including current and future distributions." Whether or not it is true that Claiborne's distribution rights were property which came into existence prior to the IRS lien, such distribution rights are not sufficiently identified as HNB's collateral. Tex. Bus. & Com.Code § 9.110; *In re Barr*, 180 B.R. 156, 159 (Bankr.N.D.Tex. 1995). The cases cited by HNB only reinforce this conclusion, since they involve collateral descriptions which specifically included the rights or interests at issue. *See, e.g., Centex Constr. Co. v. Kennedy*, 332 F.Supp. 1213 (S.D.Tex.1971) ("contract rights" identified as security interest). *Compare Barr*, 180 B.R. at 159 (Bankr.N.D.Tex.1995) (description of collateral included the "catch-all" of "general intangibles"). HNB's collateral is only current and future distributions and bonuses which are actually paid to Claiborne.

Notice of Lien on March 2, 1995,[16] well before the property came into existence, *McDermott* compels the conclusion that the IRS has priority over all private creditors, including HNB who filed an earlier financing statement, for the full amount of its lien. *McDermott,* 507 U.S. at 453–54, 113 S.Ct. at 1530–31 (whereas private creditors' liens do not attach until the instant that the debtor acquires the property, "the federal tax lien is ordinarily dated, for purposes of 'first in time' priority against § 6323(a) competing interests, from the time of its filing, regardless of when it attaches to the subject property").[17]

### 2. *TCB's Arguments Regarding Superpriority and Waiver*

TCB first argues that it primes the IRS because judgment lien creditors whose liens are perfected and choate *before* the IRS files a Notice of Federal Tax Lien have "superpriority." *See* 26 U.S.C. § 6323(a). Since, as TCB acknowledges, the IRS filed its first Notice of Lien in March 1995, this lien necessarily primes any security interest of TCB,

under both the "first in time" rule and Section 6323. *See McDermott,* 507 U.S. at 453–54, 113 S.Ct. at 1530–31.[18]

TCB further argues that the IRS has waived any priority it gained from its 1995 Notice of Lien because it issued a release of levy relating to Claiborne, dated February 8, 1996. *See* Release of Property from Levy ("[u]nder the provisions of the Internal Revenue Code section 6343, all wages, salary and other income greater than $1600.00 each month now owed to or becoming payable to the taxpayer(s) named above are released from the levy"). TCB argues that by this release the IRS waived its right to have the 1995 Notice satisfied out of Claiborne's assets except for the reserved $1,600.00 per month. TCB's Response, at 10–11. TCB bases its argument upon the language of 26 U.S.C. § 6343(a)(1), which states that, for purposes of certain releases from levy, "the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary."

Second, HNB's argument that its collateral included "distribution rights" must fail because HNB, as it concedes, did not have a perfected security interest in Claiborne's "partnership interest." See HNB's Amended Response in Opposition to the Joint Motion for Payment of Funds to Defendant, United States of America and Memorandum of Law [Doc. # 28], at 4. The Court notes that, under KPMG's Articles of Partnership, a partner's rights to distribution are a result of the ratio of each partner's "units of interest" to all units outstanding, therefore indicating that no "right of distribution" exists independent of one's "partnership interest." Articles of Partnership (Exhibit B to TCB's Post Argument Supplemental Response in Opposition of Joint Motion to Pay Funds to United States of America [Doc. # 64], Article VI § I ¶ 1, at 20. HNB has cited the Court to no documents or authority to the contrary. Finally, there is no evidence in the record that any of Claiborne's property which is currently in the registry of the Court was in existence prior to June 30, 1996. KPMG's Articles of Partnership demonstrate that annually, on June 30, partners are advised of the credits attributable to their partnership units, which is the annual allocation of partnership profits and applicable charges, as well as any other amounts in their drawing and other accounts. Articles of Partnership, Article VI, § 5, at 23. Partners' entitlement to draw periodically in advance a portion of the "annual salary and interest to which he or she is enti-

tled," Article VI § 4 (Books of Account), does not change the fact that partnership profits are distributed once a year, on June 30. HNB has not cited any document suggesting that distributions or drawing accounts are available to the partners by any other means.

**16.** The Notice of Federal Tax Lien was properly filed in Harris County, Texas, which is Claiborne's residence. 26 U.S.C. § 6323(f)(1)(A)(ii) & (f)(2)(B) (notice must be filed in the state in which the property subject to the lien is situated which, in the case of personal property, is the residence of the taxpayer).

**17.** HNB's reliance on older authorities in support of its argument that HNB's earlier filed lien primes the IRS's lien is misplaced; the Supreme Court's more recent holding in *McDermott* is direct authority contrary to HNB's position.

**18.** The IRS argues that TCB was not a judgment lien creditor until it filed its Restraining Order to Garnishee on February 26, 1996. United States' Reply to TCB's Response on Joint Motion to Pay IRS [Doc. # 46]. It is not clear whether or not TCB agrees with this statement. Nevertheless, even if TCB had become a judgment lien creditor on September 14, 1995, when it obtained its judgment, the IRS lien would be first in time. The Court therefore need not resolve this disagreement.

TCB's argument fails because, fundamentally, a release of levy is not a release of lien. *See Stewart Title and Trust of Phoenix v. Ordean*, 528 F.2d 894, 898 (9th Cir.1976); *see also Western Nat'l Bank v. United States*, 812 F.Supp. 703, 705 (W.D.Tex.1993), *aff'd*, 8 F.3d 253 (5th Cir.1993). An IRS lien does not disappear until it is fully satisfied or the statute of limitations has run. 26 U.S.C. § 6322; *Texas Commerce Bank–Fort Worth*, 896 F.2d at 161. The Internal Revenue Code deals with liens and levies separately. Subchapter C of the Internal Revenue Code, 26 U.S.C. §§ 6321–6327, pertains to liens for taxes, while Subchapter D, 26 U.S.C. §§ 6331–6344, pertains to the levy. Section 6325, the provision regarding release of liens, requires issuance of a certificate of release from lien; there is no evidence or argument before the Court that such certificate releasing the IRS' lien was issued.[19] Since TCB has not cited any cases supporting its reading of Section 6343(a)(1) or suggesting that a release of levy can affect the validity of an IRS lien,[20] and in light of the authority and statutory language discussed herein, TCB's argument is rejected.

Finally, apparently in reliance upon its argument that the 1995 IRS lien has been waived, TCB argues that the only basis for payment of finds to the IRS is the IRS' Notices of Levy, and that a Notice of Levy is insufficient to perfect the IRS' tax lien. This argument need not be addressed because, as held previously, IRS' claim is not based merely upon its Notices of Levy, but rather is based on the valid 1995 IRS Lien.

### 3. *Immunity*

KPMG has asserted as an affirmative defense that it is immune to the claims of HNB, pursuant to the provisions of Section 6332. KPMG Peat Marwick L.L.P.'s Amended Answer [Doc. # 35]. Section 6332(e) provides that "Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)) shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment." 26 U.S.C. § 6332(e). Although HNB and other parties have sought recovery from KPMG, no party has specifically opposed immunity. The Court holds that KPMG is entitled to protection under this provision, and is discharged from obligation or liability with respect to the $201,354.68 to be paid to the IRS in accordance with this opinion.

### 4. *Conclusion as to the 1995 IRS Lien*

The IRS's 1995 Lien filed, originally for a total of $182,941.97, primes all other creditors.[21] At the time of the last assessment provided to the Court, statutory additions had increased the amount owed based on the 1995 IRS lien to a total of $238,601.11 *See* June 1996 Notice of Levy. As this exceeds the amount in the Court's registry, which is $201,354.68, the IRS is entitled to

---

19. Moreover, the IRS notes that its comprehensive levy filed on December 12, 1995, was never released, and that the releases issued on February 8, 1996, and June 10, 1996 were limited to property from wage levies. The June 1996 release from levy is not in the record, but it is unnecessary to the decision herein.

20. Moreover, TCB has not cited the Court to any statutory language directly stating when or how a release of levy might jeopardize a lien, and the Court declines to infer such a result. *See Julius M. Israel Lodge of B'nai B'rith v. Commissioner of Internal Revenue*, 98 F.3d 190, 191 (5th Cir.1996) (the words of the Internal Revenue Code are to be construed in their ordinary, everyday sense).

21. Given the holding above, HNB's claim against the IRS for wrongful levy, *see* HNB's First

Amended Petition in Intervention, Counter Claim Against KPMG Peat Marwick, L.L.P. and Cross Claim Against Jerry W. Claiborne and the United States of America [Doc. # 27], at 6, is without merit and is dismissed. In addition, the Court need not reach the affirmative defenses asserted in the United States' Answer [Doc. # 7], which are that this Court lacks subject matter jurisdiction as this is a declaratory judgment action with respect to federal taxes, 28 U.S.C. § 2201(a), that this Court is without jurisdiction to enjoin the United States from the collection of taxes, 26 U.S.C. § 7421, and that this Court has no jurisdiction insofar as KPMG fails to tender any amount into the Court's registry, 28 U.S.C. § 1335.

payments of all funds in the registry.[22] The IRS further has first rights to any other monies distributed June 30, 1996, to the extent they exist, until the 1995 IRS Lien is fully satisfied.[23]

### 5. *Effect of the 1996 IRS Lien*

The parties have argued the effect of *McDermott,* 507 U.S. at 452–53, 113 S.Ct. at 1529–30, on the IRS' second lien, filed on August 19, 1996, for the amount of $162,-247.88. Under *McDermott,* for the reasons discussed previously in relation to the 1995 IRS Lien, the 1996 IRS Lien primes all other creditors as to any property coming into existence after August 19, 1996.

The Court need not reach the priority among Claiborne's private creditors and does not do so here.

### B. *Crossclaims of TCB against Claiborne*

Claiborne has brought crossclaims against TCB, which TCB has moved the Court to dismiss. *See* TCB's Motion to Dismiss, Original Answer and Complaint for Declaratory Judgment [Doc. # 24] ("TCB's Motion to Dismiss"). Claiborne's crossclaims are the following:

- Claiborne is entitled to declaratory judgment establishing his right to be free of wage or other garnishment, and declaring that the sums which the IRS has permitted KPMG to pay to Claiborne after its levy are wages and therefore exempt from garnishment.

- TCB violated the exclusive venue provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692i, by bringing

an action for garnishment in the State of New York, rather than the place where the debt arose or debtor resides; and has harassed Claiborne and engaged in conduct in violation of 15 U.S.C. §§ 1692d-f.

- TCB engaged in "wrongful garnishment and abuse of process" by negligently or intentionally engaging debt collectors or servants who inflict harm on Texas customers by, *inter alia,* filing an action to collect a consumer debt in an inappropriate district and seeking to garnish wages which are exempt under federal and Texas law by employing New York judicial process.

- TCB engaged in "intentional tort and tortious interference with existing and future contractual relations" by filing the New York action which interfered with Claiborne's contractual relationship with KPMG, by refusing to withdraw the allegedly illegal New York action, and by prosecuting the New York action "in bad faith as a subterfuge to avoid the protection of the Texas Constitution and prohibition of wage garnishment for debt" under Texas statute.

Jerry Claiborne's Answer, Crossclaims & Third Party Claims [Doc. # 6] ("Claiborne's Answer"). TCB has moved to dismiss Claiborne's claims of violation of the Fair Debt Collection Practices Act ("FDCPA") and of wrongful garnishment and abuse of process, as well as Claiborne's request for declaratory judgment. TCB's Motion to Dismiss, Original Answer and Complaint for Declaratory Judgment [Doc. # 24]; TCB's Supplemental Motion to Dismiss Jerry Claiborne's Cross–

---

**22.** HNB has made a brief argument for the marshaling of assets, arguing that private creditors may only reach the funds on deposit with the Court, while the United States may reach other assets. HNB's Post–Argument Brief [Doc. # 58], at 7 (citing *In re Talmo,* 192 B.R. 272 (Bankr. S.D.Fla.1996)). There are three threshold requirements of marshaling: (1) the contesting claimants both have secured claims against a common debtor; (2) the assets or funds subject to marshaling belong solely to the common debtor; and (3) one of the lienholders, alone, as the right to resort to more than one find or asset of the debtor. *Meyer v. United States,* 375 U.S. 233, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963); *In re San Jacinto Glass Industries,* 93 B.R. 934, 937

(Bankr.S.D.Tex.1988). As HNB has made no showing as the existence of specific assets or funds belonging solely to Claiborne which would be subject to marshaling, or of the United States' sole right to resort to such find, the Court declines to apply this equitable doctrine.

**23.** The parties have not identified any other specific property of Claiborne's in the custody of KPMG or otherwise, although such property may exist. See Claiborne's Final Partnership Account Statement for Year Ending June 30, 1996 (Exhibit A to Plaintiff's Motion for Leave to Tender Balance of Drawing Account into Registry of the Court [Doc. # 52] ).

Action [Doc. # 55].[24] As for Claiborne's other crossclaims, TCB merely argues in passing that these claims are derivative of Claiborne's claims against Cash, Jones and Springhetti ("CJ & S") and Dale Wainwright, and that these claims are without merit and should be dismissed. TCB's Motion to Dismiss, at 4.

■ The Court holds that Claiborne's crossclaim' against TCB under the FDCPA, 15 U.S.C. § 1692, must be dismissed for failure to state a claim upon which relief can be granted.[25] TCB is not a "debt collector" subject to liability under the FDCPA, which provides for civil liability only for a "debt collector who fails to comply with any provision of this subchapter." 15 U.S.C. § 1692k(a). Any claim regarding TCB's conduct on its own behalf is precluded by the statutory definition of "debt collector," which *excludes* "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor," as well as "any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts." 15 U.S.C. § 1692a(6)(A) & (6)(B).[26] Therefore, Claiborne's crossclaim against TCB based upon the FDCPA, 15 U.S.C. § 1692, is dismissed.[27]

■ Claiborne has also made a crossclaim for declaratory judgment, based upon 28 U.S.C. § 2201 and a state declaratory judgment statute, regarding his right to be free of garnishment and other related matters. Claiborne's Answer, at 7. The Court has considered all of the factors relevant in deciding whether or not to entertain a declaratory judgment action. *See St. Paul Ins. Co. v. Trejo,* 39 F.3d 585, 590–91 (5th Cir.1994); *Psarianos v. Standard Marine, Ltd., Inc.,* 12 F.3d 461, 463–64 (5th Cir.), *cert. denied,* 511 U.S. 1142, 114 S.Ct. 2164, 128 L.Ed.2d 887 (1994). The Court exercises its discretion to dismiss Claiborne's crossclaim for declaratory judgment because, *inter alia,* the claim is unrelated to matters decided herein and therefore decision by this Court would not promote judicial economy. Moreover, the matter may be fully litigated in the state court upon remand. Finally, as noted below, Claiborne's other state law claims will be remanded, and therefore this Court is not a convenient forum for the parties to obtain a decision of this issue. *See St. Paul,* 39 F.3d at 590–91.

As for Claiborne's remaining crossclaims, remand is appropriate. Claiborne's state law claims regarding debt collection, wrongful garnishment and abuse of process, and inten-

---

24. In support of its motion to dismiss Claiborne's crossclaim for wrongful garnishment and abuse of process, TCB argues that no wages have been garnished and points the Court to the Restraining Notice to Garnishee which TCB filed in New York court. The Court notes that the notice specifically exempts wages from the garnishment, identifying the subject property as "Partnership Account Control Number 14592 including Jerry W. Claiborne's capital account Social Security Number 432–80–6590 and all other non-exempt assets, property, compensation, distributions and bonuses of Jerry W. Claiborne *except wages or salary due or to become due to Jerry W. Claiborne* as provided by CPLR § 5222(a)." Restraining Notice to Garnishee (Exhibit A to TCB's Motion to Dismiss).

25. Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate when, taking the facts alleged in the complaint as true, it appears certain that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *C.C. Port, Ltd. v. Davis–*

*Penn Mortgage Co.,* 61 F.3d 288, 289 (5th Cir. 1995).

26. It appears that Claiborne intends to complain of the actions of Cash, Jones & Springhetti and/or Wainwright on TCB's behalf *See, e.g.,* Jerry Claiborne's Objection to Texas Commerce Bank's "Supplemental Motion to Dismiss" Cross Action [Doc. # 57]. While attorneys who are regularly engaged in consumer debt-collection litigation on behalf of creditor clients may be liable as "debt collectors" under the statute, *Heintz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489, 131 . L.Ed.2d 395 (1995), Claiborne's claims against CS & J and Wainwright must fail because he non-suited those claims earlier in this action. *See* Doc. # 37. Thus, they are no longer before the Court.

27. Given the above holding, the Court does not reach TCB's arguments that dismissal is appropriate because the debt at issue is not a "consumer debt" and because TCB properly brought its garnishment action in New York.

tional tort and tortious interference with existing and future contractual relations do not involve a federal question. Because this Court has dismissed all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over these remaining claims, 28 U.S.C. § 1367(c)(3), and they are remanded to state court.

### CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Plaintiff's **Motion for Leave to Tender Balance of Drawing Account Into Registry of the Court** [Doc. # 52] is **GRANTED**. It is further

ORDERED that the **Joint Motion for Payment of Funds to Defendant, United States of America** [Doc. # 11] is **GRANT-ED**. All funds currently in the registry of the Court ($201,304.68) are to be paid to the United States of America. This is a decision granting summary judgment as a matter of law on the issue of creditor priority, to the extent such issues are ripe for decision. If the parties choose to submit additional materials regarding factual or legal issues raised by this opinion *that have not been addressed in prior submissions,* they must do so **on or before February 27, 1997.** Responses, if any, must be filed by March 3, 1997. It is further

ORDERED that TCB's **Motion to Dismiss** [Doc. # 24], which pertains to Claiborne's crossclaims, is **GRANTED** as to Claiborne's crossclaims under the Fair Debt Collection Practices Act and the federal declaratory judgment statute, 28 U.S.C. § 2201. It is further

ORDERED that (1) all remaining crossclaims brought by Claiborne, and (2) all remaining issues of creditor priority among Claiborne's private creditors, to the extent such claims are ripe, are **REMANDED** to the 280th Judicial District Court of Harris County, Texas. It is finally

ORDERED that all parties' requests for attorneys' fees are **DENIED**.