**Ibraham E. HANAFY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. Civ.A. 3:96–CV–2957–X.

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 12, 1998.

G. Roland Love, Jeffrey Lee Crouch, Donohoe, Jameson & Carroll, Dallas, TX, for plaintiff.

Ramona Stephens Notinger, U.S. Department of Justice, Tax Division, Dallas, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

Pending before the Court are Plaintiff's Motion for Summary Judgment and Defendant's Cross–Motion for Summary Judgment. After careful consideration of the summary judgment motion, the filed materials and the applicable law, the Court determines that the Defendant's motion should be, and is hereby **GRANTED** and the Plaintiff's motion should be, and is hereby **DENIED.**

# I.

## FACTS

On August 30, 1996, Jerry Bob Rose and his wife Ja Nell Gentry Rose executed and delivered a Warranty Deed with Vendor's Lien conveying title to real property and certain improvements located at 1128 N. Main Street, Cleburne, Texas ("the Property") to Ibraham Hanafy in exchange for $180,000.00. In June 1996, the IRS made employment and unemployment tax assessments against Jerry Bob Rose for the tax years 1992–1995 resulting in the IRS filing two separate Notices of Federal Tax Lien ("Notices") against Rose on August 20, 1996 based on these assessments. One Notice was filed in the personal property records of Johnson County. The other Notice was filed for record with the clerk of Johnson County in the real property records. Johnson County maintains a computerized recording and indexing system. Unlike the Notice filed in the personal property records, the Notice filed in the real property records was not actually scanned into the computer and indexed at the time of filing on August 20, 1996. Indeed, the parties have not presented any evidence defining the exact date and time that the Johnson County clerk's office scanned and indexed the real property Notice.

The filing, recording, and indexing of these two Notices is the focal point of the two motions for summary judgment pending before this Court.

Hanafy asserts the following: Some time around July 31, 1996, Old Republic Title Company of Cleburne commissioned a search of the Johnson County property records in conjunction with Hanafy's pending agreement to purchase the Property. The search revealed no federal tax lien relating to the Property. On August 29, 1996, another search of the Johnson County property records was performed that also revealed no federal tax liens against Rose. Hanafy closed on the purchase of the Property on August 30, 1996, and the deed and deed of trust were filed with the Johnson County Clerk's office on September 4, 1996. At the time of filing, Burt Powell, an agent of Old Republic Title Company of Cleburne, requested the clerk to perform another search of the Official Records of Johnson County for any federal tax lien notices related to Rose. That search also failed to reveal any such liens against Rose. Indeed, Hanafy asserts that the first indication of the Notices filed by the IRS on August 20, 1996, was in the form of telephone calls from the IRS received by Powell and Ann Cochran, Vice–President of Operations at Old Republic Title of Cleburne. Hanafy's contends that it was impossible to discover the Notices prior to the closing.

The IRS disputes Hanafy's assertion that the Johnson County records were searched after July 31, 1996. The IRS asserts that a reasonable search of the daily filings of the real property liens would have revealed the Notice filed in the real property records. Furthermore, the IRS argues that the Notice filed in the personal property records was indexed on August 20, 1996, and a reasonable search of the public records would have revealed the federal tax liens against Rose's property. The IRS contends that the mere filing of the Notices provided Hanafy with the requisite notice to validate its liens against the Property.

To prevent foreclosure of the Property, Hanafy paid Rose's tax liability, interest, and penalties in the amount of $39,291.95. Subsequently, the IRS released its liens against the Property.

Now before the Court is plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment as to all counts.

# II.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the summary judgment record demonstrates that no genuine issue of material fact exists, and therefore, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has met its burden, the nonmovant may not rest upon the pleadings but most identify specific

facts that establish a genuine issue exists for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).

Here, the parties agree that the present motion and cross-motion for summary judgment present an issue of law, which is appropriate for resolution on summary judgment. The resolution of these motions for summary judgment turns on the answer to the issue of whether the mere filing, and thus recording, of a deed of real property with the county clerk is sufficient to constitute notice to purchasers under Texas law or whether, as the plaintiff urges, Texas law requires indexing of a deed before it is valid against a purchaser of property without notice or knowledge of the existence of the deed. There is no dispute that the IRS did file their lien with the Johnson County Clerk on August 20, 1996.

## III.

### HANAFY'S WRONGFUL LEVY CLAIM

Pursuant to 26 U.S.C. § 6321, a general federal tax lien arises under the following circumstances:

> If any person liable to pay any tax neglects or refuses to pay same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

The federal tax lien attaches to the taxpayer's property upon assessment of the tax liability. 26 U.S.C. § 6322 (1989).

Section 6323(f) of the Internal Revenue Code sets forth the requirements for a valid federal tax lien. 26 U.S.C. § 6323(f) (1989). The federal tax lien created under § 6321 is therefore contingent upon a properly filed notice of lien such that "[t]he lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." 26 U.S.C. § 6323(a). In general, sub-

section (f) designates the place for filing notice. However, subsection (f)(4) establishes an additional requirement for the notice when real property falling within the following parameters is concerned:

> (4) Indexing required with respect to certain real property.—In the case of real property, if—
>
> (A) under the laws of the State in which the real property is located, a deed is not valid as against a purchaser of the property who (at the time of purchase) does not have actual notice or knowledge of the existence of such deed unless the fact of filing of such deed has been entered and recorded in a public index at the place of filing in such a manner that a reasonable inspection of the index will reveal the existence of the deed, and ·
>
> (B) there is maintained (at the applicable office under paragraph (1)) an adequate system for the public indexing of Federal tax liens, then the notice of lien referred to in subsection (a) shall not be treated as meeting the filing requirements under paragraph (1) unless the fact of filing is entered and recorded in the index referred to in subparagraph (B) in such a manner that a reasonable inspection of the index will reveal the existence of the lien.

Hanafy disputes the validity of the Notices filed by the IRS against Rose's real property on the basis that the notice fails to comply with the requirements of § 6323(f)(4). According to Hanafy, subsection (f)(4) applies because Texas law requires indexing of deeds before they are valid against a purchaser without notice.[1] The IRS argues that subsection (f)(4) does not apply to this case because Texas law does not require public indexing for a deed to be valid against a purchaser of real property who does not have notice. Instead, the IRS urges that under Texas law the filing of a deed, not the indexing, constitutes sufficient notice to all persons of the deed's existence.

Hanafy's position is premised on *Harriman v. U.S.*, a district court decision out of the Southern District of Texas. Civ.A. No. H–91–3283, 1992 WL 193678 (S.D.Tex. July

---

**1.** Because the situs of the Property is Johnson County, Texas law guides this inquiry.

7, 1992). In *Harriman*, the court found that the requirements of § 6323(f)(4)(A) are satisfied by Texas Property Code § 13.001(a). *Id.* at *3. Texas Property Code § 13.001 addresses the validity of an unrecorded instrument affecting real property. Section 13.001(a) states:

(a) A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged or proved and *filed for record as required by law.*

(Emphasis added). The court cited no authority to support the position that Texas law mandates indexing to validate a deed or otherwise give notice to the world of its existence. Although perhaps required in some states, a review of Texas law governing the recording of instruments proves that such a requirement simply does not exist.

Determining the import of the phrase "filed for record" is pivotal to a resolution of the parties' dispute. While the IRS urges a literal interpretation of the phrase, Hanafy argues that "filed for record" encompasses more than the mere filing of a deed with the county clerk, which the IRS did prior to Hanafy's purchase of the Property. To meet the criteria of § 6323(f)(4)(A), "filed for record" necessarily must include both recording and indexing of a deed before a purchaser is deemed to have notice. However, Texas Property Code § 13.002 expressly states that "[a]n instrument that is *properly recorded* in the proper county is notice to all persons of the existence of the instrument." (emphasis added). Unless "properly recorded" can be construed to mean "properly indexed" it appears that Hanafy's position must fail under the express language of § 13.002.

The scope of "properly recorded" is addressed in Local Government Code § 193.001, which delineates the manner of recording instruments:

(a) The county clerk shall record instruments filed for recording in the order that they are filed. The clerk shall record each instrument with any acknowledgment, proof, affidavit, or certificate that is attached to it.

(b) The clerk shall note at the foot of the record the date and time that the instrument was filed for recording.

(c) If an instrument that is filed for recording is acknowledged or proved in the manner prescribed by law for record, the clerk shall make a record of the names of the parties to the instrument, and the time that the instrument was filed. If required, the clerk shall give the person who files the instrument a receipt stating this information.

(d) The clerk shall certify under the clerk's signature and seal of office the date and time that the instrument is recorded and the specific location in the records at which the instrument is recorded. After recording the instrument, the clerk shall deliver the instrument to the person who is entitled to it.

Section 193.001 describes in detail the requisite steps for *recording* instruments such as deeds. The Court notes that nowhere is the word "index," or any form thereof, mentioned in § 193.001. Instead, the indexing requirements for recorded deeds have been segregated from the recording requirements of § 193.001 and are found in Local Gov't Code § 193.003, which prescribes the manner of indexing of real property records. It is apparent from these code sections and demonstrated throughout the recording statutes that indexing is a concept separate from recording. The two words are not used interchangeably, and each has its own set of criteria to achieve its status.

■ Beyond this separate treatment, the position that indexing validates a deed or other instrument against a purchaser without notice finds no support in Texas case law. Like most questions in the area of real property, the law is so well settled and static one usually has to go back in time to find cases on point. The rule has long been that the *filing* of a deed with the county clerk charges the purchaser with notice of the existence of the deed, notwithstanding the clerk's failure to record the deed. *Throckmorton v. Price,* 28 Tex. 605 (Tex.1866); *William Carlisle & Co. v. King,* 103 Tex. 620, 627, 133 S.W. 241, 243 (Tex.1910). The Texas Supreme Court

enunciated this rule in *Throckmorton,* a case based on circumstances virtually identical to this case. In *Throckmorton,* Charles Lacy executed a deed of trust to Throckmorton to secure a debt. The deed of trust was filed for record with the county clerk on December 20, 1858. On February 21, 1859, Lacy conveyed the same land covered by Throckmorton's deed of trust to the appellees. Appellees instituted a lawsuit seeking an injunction to restrain Throckmorton from selling the subject land.

At trial, the county clerk testified that sometime in February 1859, the guardian of appellees came to his office to inquire whether any deed or incumbrance on the land in question existed. The clerk informed the guardian that none existed. The clerk then accepted for filing Lacy's deed to the appellees. Afterwards, the clerk discovered the deed of trust filed on December 20, 1858, a date on which a voluminous amount of deeds had been filed. At the time of filing, the clerk indorsed the deed of trust with "Filed for record this 20th day of December, 1858, at 3 o'clock." The clerk took no other step toward recording the deed, but instead placed it away to be recorded at a later time. The trial court submitted a jury instruction that mimics the position urged by Hanafy:

> The filing of a deed of trust with the clerk of the county, without recording the same or entering it in a book for record, is no constructive notice as against subsequent purchasers, for a valuable consideration, in good faith, without actual notice. The simple delivery to the clerk of the county court and the indorsement thereon of the time of such delivery of a deed in trust is not constructive notice as against subsequent purchasers for a valuable consideration without actual notice.

On appeal, the Texas Supreme Court held that the jury instruction was inaccurate and reversed the judgment and remanded the case. The Supreme Court held that the purchaser was charged with notice of the existence of the deed by virtue of the filing of the deed of trust with the county clerk. The court based its decision on a statute stating that "any instrument required to be recorded shall be considered as recorded from the time it was deposited for record with the clerk." The court noted that Texas law requires the clerk to enter the names of the parties to instruments filed for record in alphabetical order, the date and nature thereof, and the time of its delivery, in a book provided for that purpose. The court further held that the clerk's failure to comply with the statutory requirements does not affect the notice created by the filing of an instrument.

The Supreme Court's decision in *Throckmorton* is reinforced by Local Gov't Code § 191.003 which states that "[a]n instrument filed with a county clerk for recording is considered *recorded from the time that the instrument is filed.*" (emphasis added). The decision rendered in *Throckmorton* (as does the statute) arrives at a logical conclusion. A clerk's failure to comply with recording and indexing requirements should not affect the validity of the instrument filed, nor should it prejudice the rights of the instrument holder. Once a party files its instrument and obtains its file marked copy to prove it was filed, it has done all it could do. The party is not to blame if the clerk is derelict in his or her duty to index. The policy issue is who bears the burden to check for instruments yet to be indexed. Apparently, Texas has adopted a caveat emptor philosophy. In this case, Johnson County provided title searchers a means of locating yet-to-be-indexed recorded liens and other encumbrances against real property. However, the fact that Hanafy could have discovered the IRS' notice against Rose's real property by manually looking through the hard copy daily filings is really beside the point. The IRS achieved the requisite notice to validate its liens against the Property when its filed its notices of federal tax lien in the real and personal property records of Johnson County, ten days prior to Hanafy's purchase of the Property.

Thus, the phrase "filed for record" means what it literally says.[2] To interpret the Tex-

---

**2.** Hanafy notes that Johnson County uses computerized document imaging and indexing as al-

lowed by Local Gov't Code § 205.001 *et seq.* instead of physical alphabetical filing. While

as statutory and case law as urged by Hanafy potentially could place valid lienholders such as the IRS up the proverbial creek without a paddle. Assume the clerk responsible for recording and indexing documents after they were filed hated the federal government or the IRS, and therefore, simply chose to never record the properly filed tax liens or list them in the index. Is the federal government simply deprived of its rights because of the clerk's contempt for the IRS? Such a result is illogical, inherently inequitable, and not advocated by Texas law.

■ Section 6323(f)(4) does not apply to this case. Accordingly, the IRS was not required to comply with the additional requirements found therein. Under § 6323, the IRS's Notices are valid against Hanafy if they were filed in the proper location according to the situs of the real property and the residence of Rose. The Property is located in Johnson County where the IRS filed its Notices. Hanafy does not dispute the time of or location of the filing or the situs of the Property. Because the IRS has complied with the requirements of 26 U.S.C. § 6323, the IRS has a valid lien against the Property.

■ Federal law governs the determination of whether an attached tax lien has priority over competing interests in a taxpayer's property. *Metropolitan Nat'l Bank v. United States*, 901 F.2d 1297, 1300 (5th Cir. 1990). To determine whether the IRS's federal tax liens enjoy priority over the interests of Hanafy, the Court must apply the common law principle of "the first in time is the first in right." *U.S. By and Through I.R.S. v. McDermott*, 507 U.S. 447, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993). The uncontroverted evidence demonstrates that the IRS filed its Notices on August 20, 1996, which constitutes recording under Texas law. Hanafy did not file his deed until September 4, 1996. Thus, the federal tax liens have priority over Hanafy's subsequently filed deed. *See Prewitt v. United States*, 792 F.2d 1353, 1359 (5th Cir

.1986) (tax lien filed before divorce decree filed had priority over intervening purchaser). Consequently, Hanafy's claim of wrongful levy fails. The federal tax liens attached to Rose's property, both real and personal on or before August 20, 1996. Therefore, Hanafy purchased the Property subject to the federal tax liens. *United States v. Bess*, 357 U.S. 51, 57, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958) (transfer of property after attachment of tax lien has no affect on lien). He may have a claim against the Old Republic Title Company of Cleburne, but he does not against the IRS.

■ Hanafy argues that. even assuming subsection (f)(4) does not apply, the IRS's liens still would not be valid against Hanafy because the liens do not comply with Texas Property Code § 14.004. However, the same logic applied by the Texas Supreme Court in *Throckmorton* once again necessarily applies to the present argument. Section 14.004 is entitled "Duties of Filing Officer" and describes the filing officer's responsibilities upon receipt of a notice of federal lien. What is immediately evident from § 14.004 is that the recording and indexing requirements found therein are the burden of the filing officer, not the IRS. As this Court previously pointed out, once the IRS filed its Notices, it had done all that it could do to record and index the Notices. Indeed, § 14.002 simply mandates that notices of liens upon real property be "filed in the office of the county clerk in the county where the real property subject to the liens is situated." Texas Prop.Code § 14.002. Hanafy does not dispute that the IRS complied with this filing requirement. Thus, applying the rule of law set forth in *Throckmorton* and Local Government Code § 191.003, the Notices became valid against Hanafy's subsequently recorded deed upon the IRS's filing of the Notices.

## IV.

### HANAFY'S DUE PROCESS CLAIM

Hanafy attempts to persuade this Court that his due process rights have been violat-

---

electronic storage of records differs from the traditional method of recording, the same reasoning applied in *Throckmorton* applies to electronic storage. Regardless of the manner of storage, the IRS was required to present its Notices to the county clerk for filing. Once the IRS

performed its duties, under Texas law, the liens became valid against a subsequent purchaser notwithstanding the clerk's failure to enter the notices into a physical alphabetical index or scan them into a computer.

ed unless an indexing requirement is implemented. Although Hanafy failed to cite any authority for this proposition, the Court independently finds that this argument has no merit. The relevant portion of the Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." Hanafy urges that his present situation amounts to a taking or property without due process of law. Hanafy asserts that an indexing requirement is essential to prevent such an unconstitutional result.

▮ Hanafy's argument fails to recognize that Texas recording statutes provide adequate procedures to place purchasers such as himself on notice of preexisting liens on real and personal property. "Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). "[T]he Due Process Clause ... is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property." *Davidson v. Cannon,* 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

Texas law, when complied with, provides the requisite notice to survive a constitutional challenge under the Fifth Amendment to the United States Constitution and the Texas Constitution as well as prevent individuals from ending up in Hanafy's shoes. In addition to the statutory safeguards, Johnson County provides the daily filings to prevent the exact situation in which Hanafy now finds himself. Thus, Hanafy incorrectly argues that an indexing requirement is the only means of preventing unconstitutional takings of property from purchasers without notice. The statutory filing requirements presently in force do not violate Hanafy's due process rights.

## V.

### CONCLUSION

Based on the foregoing reasons, this Court concludes that plaintiff's Motion for Summary Judgment must fail. Accordingly, de-

fendant is entitled to summary judgment as a matter of law.

SO ORDERED.