USA v. Templeman                        CV-98-697-B    03/21/00   P

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**United States of America**

    **v.**                                        Civil No. 98-697-B
                                                    Opinion No. 2000 DNH 074

**Andrew D. Tempelman, et al.**


## MEMORANDUM AND ORDER


The United States brings this action pursuant to 26 U.S.C. §§ 7401 and 7403 to reduce to judgment federal tax assessments against Andrew D. Tempelman and Priscilla Tempelman and to foreclose federal tax liens upon certain real property presently or formerly owned by the Tempelmans.[1] The assessments and liens in question arise from the Tempelmans' unpaid federal income tax liabilities for tax years 1983, 1984, 1985, and 1990.[2] Also named as defendants are the Fellowship of Perfect Liberty and

---

[1] This court has subject matter jurisdiction over the present action under 28 U.S.C. §§ 1340, 1345 and 26 U.S.C. § 7402.

[2] The government originally also brought a claim against the Tempelmans based on an assessment for tax year 1987. I previously dismissed that claim by agreement of the parties.

Citizens Bank of New Hampshire, both of which purportedly have an interest in the property encumbered by the liens. Before this court is the government's motion for summary judgment (Doc. #22) and the Tempelmans' objection (Doc. #24). For the reasons that follow, I grant the government's motion.

## I. BACKGROUND

### A. The Tempelmans and the Maple Street Property

Andrew and Priscilla Tempelman are husband and wife. On or about December 28, 1976, the Tempelmans acquired as joint tenants with rights of survivorship the property that is the subject of this action, which is located at 24 Maple Street in Milford, New Hampshire.[3] Since 1977, the Tempelmans have operated the Maple

---

[3] I refer to the property at issue as "the Maple Street property." In a paragraph of the government's complaint not denied by the Tempelmans in their answer, this property is described as:

> A certain parcel of land with the buildings thereon situated in the Town of Milford, County of Hillsborough, State of New Hampshire, bounded and described as follows:
>
> On the north by Maple Street;
> On the east by North River Road;
> On the south by Elm Street;
> On the west by Madison Street,
>
> Containing 7 acres, more or less.
>
> Being the same premises conveyed to Andrew D. Tempelman and Priscilla Tempelman by deed of Hillsborough Mills, dated

Street property as a restaurant and inn known as "The Ram in the Thicket."

B. **Deficiencies and Assessments for Tax Years 1983, 1984, and 1985**

On June 29, 1990, the Internal Revenue Service ("IRS") sent the Tempelmans a notice of deficiency pursuant to 26 U.S.C. § 6212, asserting that the couple owed over $145,000 in taxes, penalties, and interest for tax years 1983, 1984, and 1985. The Tempelmans filed a timely petition under 26 U.S.C. § 6213(a), seeking a redetermination of the deficiencies by the United States Tax Court. On October 4, 1991, the Tempelmans entered into an agreement with the Commissioner of the IRS, in which they stipulated that their tax deficiencies with additions for 1983, 1984, and 1985 amounted to approximately $44,635 plus interest. The Tax Court adopted the parties' agreement in a decision entered on November 27, 1991.

On December 23, 1991, a delegate of the Secretary of the Treasury made assessments against the Tempelmans for 1983, 1984, and 1985 in accordance with the Tax Court's decision.[4] A

---

December 28, 1976 and recorded in Hillsborough County Registry of Deeds, Book 2503 at Page 382.

Compl. (Doc. #1) ¶ 11; see also Answer (Doc. #8) at 1.

[4] The IRS is ordinarily prohibited from making such an assessment until the Tax Court's decision becomes "final." See

delegate of the Secretary of the Treasury issued notices of these assessments to the Tempelmans and made demand for payment. The Tempelmans have failed to make full payment. Their outstanding liability for tax years 1983, 1984, and 1985 is $158,319.15 plus statutory interest from September 3, 1999.

## C. Deficiency and Assessment for Tax Year 1990

On April 26, 1993 and September 26, 1994, a delegate of the Secretary of the Treasury made assessments against the Templemans for their 1990 federal income tax liability in the amounts of $5505.26 and $4236.00, for a total of $9741.26. A delegate of the Secretary of Treasury issued notices and made the required demands for payment of the 1990 assessments. The Tempelmans have not fully paid the assessed amount. Their outstanding

---

26 U.S.C.A. § 6213(a) (West 1989 and Supp. 1999). In the present case, however, the Tempelmans expressly waived that restriction as part of their stipulated agreement with the IRS Commissioner. See Pl.'s Mot. for Summ. J. (Doc. #22), Ex. 2 at 2.

indebtedness for tax year 1990 is $4909.94 plus statutory interest from September 3, 1999.

**D.    Filing of Notices of Federal Tax Liens**

On August 14, 1992, the IRS filed a notice of federal tax lien based on the Tempelmans' unpaid tax liabilities for 1984 and 1985 in the Hillsborough County Registry of Deeds. On December 22, 1993, the IRS filed a similar notice of federal tax lien based on the Tempelmans' 1983 and 1990 liabilities in the Hillsborough County Registry of Deeds.

**E.    The Administrative Levy**

At some point not clearly indicated by the record, the IRS levied upon the Maple Street property and attempted to sell the property at public auction.[5] The person who bid on the property apparently defaulted on the sale. Thereafter, on August 6, 1998, the IRS released its levy on the property.

---

[5] In its reply, the government states that the levy and auction occurred in August 1998. See Reply (Doc. #26) at 2. The Tempelmans agree that the auction took place in August 1998, but submit a Release of Levy form that indicates that the property was levied upon on November 18, 1994. See Defs.' Obj. (Doc. #24) ¶ 8, Ex. 2.

**F.    The Fellowship of Perfect Liberty**

On or about August 12, 1998, the Tempelmans purportedly transferred their interests in the Maple Street property to the Fellowship of Perfect Liberty.  The Fellowship is a church or religious organization founded by Andrew Tempelman in 1977.  Priscilla Tempelman also is a member of the Fellowship.  Members of the Fellowship regularly meet at the Maple Street property for discussions and/or services.

The Tempelmans did not receive any consideration from the Fellowship in exchange for the Maple Street property.  Rather, they view the purported transfer as a donation.  After the purported transfer, the Tempelmans continued to operate the inn and restaurant on the property in the same manner as previously.

**G.    Citizens Bank of New Hampshire**

The government named Citizens Bank of New Hampshire, the successor in interest by merger to The Bedford Bank, as a defendant in this action because it had recorded a mortgage against the Maple Street property.  In an endorsed order dated June 21, 1999, this court granted the government's motion for default judgment against Citizens Bank.  In its motion, the government requested that any court-ordered sale of the Maple Street property be free of Citizens Bank's mortgage lien and that

the Bank's lien attach instead to the sale proceeds, prior in right to the federal tax liens, to the extent that the Templemans had any remaining indebtedness to the Bank. On June 22, 1999, the Clerk entered a default judgment against Citizens Bank in accordance with the June 21, 1999 endorsed order.

## H.    The Motion for Summary Judgment and Objection

The government now moves for summary judgment, arguing that there is no genuine issue of material fact in this case and that it is entitled as a matter of law to the following: (1) a judgment against the Tempelmans for the unpaid balance of their assessed federal income tax liabilities for 1983, 1984, 1985, and 1990, which amounts to a total of $163,229.09 plus interest from September 3, 1999; (2) a decree that the government holds federal tax liens, arising from the Tempelmans' unpaid tax liabilities for 1983, 1984, 1985, and 1990, upon the Maple Street property; and (3) a decree that those liens be foreclosed by a sale of the Maple Street property, free of the claims of all other parties to

this action, upon a proper post-judgment motion by the government.

The Tempelmans, acting without benefit of legal counsel, have objected to the government's motion on a variety of grounds. Read in the generous light appropriate to filings by pro se litigants, the Tempelmans' objection contends that summary judgment in the government's favor is unwarranted because: (1) the government is precluded from bringing this enforcement action by virtue of its prior levy upon the Maple Street property and its release of that levy; (2) the property passed by donation to the Fellowship free from the government's liens; (3) the assessments for tax years 1983, 1984, and 1985, upon which some of the liens are based, were invalid because they flowed from a Tax Court decision tainted by fraud and/or duress; and (4) the assessment for 1990 was inaccurate.[6]  For the reasons that

---

[6]  In a motion to dismiss for failure to state a claim previously filed in this action, the Tempelmans argued that the assessment for tax year 1983 was untimely and thus could not form the basis for any judgment against them. See Defs.' Mot. to Dismiss (Doc. #18) ¶¶ 1-11.  Because the Tempelmans have neither included this argument in their objection to summary judgment nor adduced any evidence to substantiate the argument, it cannot preclude summary judgment in the government's favor.

follow, I conclude that the Tempelmans' arguments are insufficient to forestall summary judgment against them.[7]

## II.  **STANDARD OF REVIEW**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one "that might affect the outcome of the suit under the governing law"; a genuine factual issue exists "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[7]  The Templemans also argue that the federal income tax is unconstitutional or otherwise unlawful.  I agree with the other courts that have found this contention to be without merit.  See, e.g., Cook v. Spillman, 806 F.2d 948, 949 (9th Cir. 1986) (per curiam) (ruling that challenge to the constitutionality of the federal income tax was "frivolous" and merited sanction).  To the extent that the Tempelmans' objection contains other legal arguments or factual allegations not discussed in this memorandum, I have reviewed them and found them to be either without merit or unsubstantiated by the record.

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the burden shifts to the nonmoving party, which must "produce evidence on which a reasonable trier of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323; Anderson, 477 U.S. at 249). When ruling on a motion for summary judgment, I must construe all the evidence produced by the parties in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See Thomas v. Eastman Kodak Co., 183 F.3d 38, 42 (1st Cir. 1999), cert. denied, 120 S.Ct. 1174 (2000).

## II.  DISCUSSION

### A.  The Prior Levy and Release of Levy

The Tempelmans' primary challenge to the government's summary judgment motion is based on the prior levy upon the Maple Street property and the release of that levy after the unsuccessful attempt to sell the property at auction.[8]  Construed generously, the Tempelmans' objection asserts that because the government released the levy upon the property, it cannot now seek to enforce its liens by means of this suit.  I reject the Tempelmans' contention because, as explained below, it rests on a misunderstanding of the nature of tax liens and the government's authority to enforce them.

A federal tax lien arises against a taxpayer's property when three conditions are satisfied.  First, the government must make an assessment of a taxpayer's tax liability.  See 26 U.S.C.A. § 6203 (West 1989).[9]  Second, the government must issue a notice of

_____

[8]  If a bidder at a sale of seized property fails to pay the purchase price as required, the IRS may treat the sale as a nullity.  See 26 U.S.C.A. § 6335(e)(3) (West 1989 and Supp. 1999).

[9]  An assessment is an administrative determination that a taxpayer is indebted to the government for taxes.  It is made by formally recording the assessed amount as provided under the tax code and applicable regulations.  See 26 U.S.C.A. § 6203; 26 C.F.R. § 301.6203-1 (1999).  Special rules apply to assessments -- such as those against the Tempelmans for tax years 1983, 1984, and 1985 -- that are based on a deficiency of tax paid.  When the

the assessment and a demand for payment within 60 days after the assessment is made.[10]  See 26 U.S.C.A. § 6303(a) (West 1989). Third, the taxpayer must neglect or refuse to pay the full amount demanded.  See 26 U.S.C.A. § 6321 (West 1989).

When these conditions are met, a federal tax lien arises as of the date the assessment was made.  See 26 U.S.C.A. §§ 6321, 6322 (West 1989).  Once created, the lien continues to exist until either the underlying liability is discharged or the limitations period on enforcement runs.  See id.  The lien attaches to all property and all rights to property, whether real or personal, belonging to the taxpayer.  See 26 U.S.C.A. § 6321; United States v. National Bank of Commerce, 472 U.S. 713, 719-20 (1985).[11]

---

taxpayer has paid less than his or her total tax liability, the assessed amount is the difference between the tax due and the tax paid.  Before making an assessment based on a deficiency, the IRS must send a notice to the taxpayer informing him or her of the amount of the deficiency.  The taxpayer then has 90 days from the date of mailing to file a petition in Tax Court contesting the deficiency.  See 26 U.S.C.A. §§ 6211-6213 (West 1989 & Supp. 1999).

[10]  The notice and demand requirement only applies when the IRS makes an assessment pursuant to 26 U.S.C.A. § 6203.  See 26 U.S.C.A. § 6303(a) (West 1989).

[11]  If two spouses are jointly liable for unpaid taxes, the government may seize and sell any interest in property owned by the spouses as joint tenants or tenants in common.  See 14 Jacob Mertens Jr., The Law of Federal Income Taxation § 54A.13 at 73 (July 1999 Semiannual Cum. Supp.).

In this case, the United States has presented Certificates of Assessments and Payments -- also known as Forms 4340 -- for tax years 1983, 1984, and 1985. See Pl.'s Mot. for Summ. J. (Doc. #22), Exs. 3, 4, 5.[12] In the absence of contrary evidence, these forms are sufficient to establish that the IRS made valid assessments against the Tempelmans. See Gentry v. United States, 962 F.2d 555, 557-58 (6th Cir. 1992); Geiselman v. United States, 961 F.2d 1, 6 (1st Cir 1992) (per curiam); United States v. Chila, 871 F.2d 1015, 1017-18 (11th Cir. 1989). Moreover, because they list "First Notice" (or "23C") dates for each assessment, see Pl.'s Mot. for Summ. J. (Doc. #22), Ex. 3 at 1; Ex. 4 at 1; Ex. 5 at 1, these same forms also constitute presumptive proof that the IRS sent the Tempelmans notice of the listed assessments and made demands for payment. See Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) (per curiam); Gentry, 962 F.2d at 557-58; Geiselman, 961 F.2d at 6. Finally, the Forms 4340, in combination with the affidavit of debt submitted by the government, demonstrate that the Tempelmans have failed to pay a substantial portion of the assessed liabilities

_____

[12] The government has also provided a Form 4340 for tax year 1990. See Pl.'s Mot. for Summ. J. (Doc. #22), Ex. 7. However, because the Tempelmans raise distinct challenges to the government's claims for 1983-1985 and for 1990, I address them separately.

for 1983, 1984, and 1985.  <u>See</u> Pl.'s Mot. for Summ. J. (Doc. #22), Exs. 3, 4, 5, 6.  The Tempelmans have not presented any evidence capable of rebutting the presumption that the assessments for 1983, 1984, and 1985 were valid and that notice was given and demand for payment made as required.[13]  Nor have they presented any evidence to counter the government's showing that payment in full has not been made.  Accordingly, I conclude that federal tax liens did arise and attach to the Maple Street

---

[13]  The accountant's reports presented by the Tempelmans, <u>see</u> Defs.' Obj. (Doc. #24), Ex 1, cannot rebut the presumptive correctness of the assessments for 1983-1985, because the reports purportedly relate to the Tempelmans' actual tax liability for those years.  The Tempelmans actual tax liability is not relevant to the correctness of the assessments, however, because the assessments were directly based on amounts that the Tempelmans agreed to in their stipulated agreement with the IRS, not on any calculation of actual tax liability.  <u>See</u> Pl.'s Mot. for Summ. J. (Doc. #22), Exs. 2, 3, 4, 5.

property as of the date of the assessments for tax years 1983, 1984, and 1985.

The government has a number of means at its disposal for enforcing tax liens and collecting unpaid taxes. At issue here is the relationship between two primary mechanisms: the administrative levy under 26 U.S.C. § 6331 and the lien foreclosure suit under 26 U.S.C. § 7403. See 26 U.S.C.A. §§ 6331, 7403 (West 1989 & Supp. 1999); Markham v. Fay, 74 F.3d 1347, 1353-54 (1st Cir. 1996) (discussing the two mechanisms).[14]

Administrative levy is a summary process by which the government can seize and sell a delinquent taxpayer's property without seeking judicial recourse. See National Bank of Commerce, 472 U.S. at 720-21; United States v. Rodgers, 461 U.S. 677, 682-83 (1983). If a taxpayer fails to pay a tax assessment within ten days after receiving the government's notice and demand for payment, the government can collect the tax by levying

---

[14] The government may also, as it has in this case, seek to reduce to judgment the unpaid balance of any assessments against a taxpayer, just as if the assessments were ordinary debts. See United States v. Rodgers, 461 U.S. 677, 682 (1983); Markham, 74 F.3d at 1354.

upon all property owned by the taxpayer.  See 26 U.S.C.A. §§ 6331(a) & (d).  Real property that has been seized by the government may thereafter be sold at public auction, with the proceeds to be applied against, inter alia, the delinquent taxpayer's tax liability.  See 26 U.S.C.A. §§ 6335, 6342(a) (West 1989 & Supp. 1999).  The government must notify a taxpayer of its intent to levy upon the taxpayer's property, but need not notify third parties that have an interest in the encumbered property.  See 26 U.S.C.A. § 6331(d); Rodgers, 461 U.S. at 696.

The government also can enforce a federal tax lien by bringing a civil action in federal district court.  See 26 U.S.C.A. § 7403(a); National Bank of Commerce, 472 U.S. at 720; Rodgers, 461 U.S. at 680-82.  All parties with an interest in the encumbered property must be joined in such a proceeding.  See 26 U.S.C.A. § 7403(b).  A lien foreclosure suit is a plenary action in which the court adjudicates the merits of all claims to and liens upon the subject property.  See 26 U.S.C.A. § 7403(c).  If the government's claim against the property is established, the court may decree a sale of the property and a distribution of the proceeds in accordance with the parties' interests in the

property.  See id.; Rodgers, 461 U.S. at 693-94, 705-10.

In the present case, the government levied upon the Maple Street property, then released the levy, before bringing this action.  The Tempelmans argue that the prior levy and release of levy precludes the present action.  The Tempelmans are incorrect, however, because they misunderstand the legal effect of a release of levy.

A release of levy neither extinguishes the underlying lien nor discharges the specific property levied upon from the lien. Compare 26 U.S.C.A. § 6343(a) (West 1989 & Supp. 1999) (release of levy) with 26 U.S.C.A. § 6325(a) (West 1989 & Supp. 1999) (release of lien) and 26 U.S.C.A. § 6325(b) (West 1989 & Supp. 1999) (discharge of specific property from lien).[15]  Rather, when the government releases a levy upon specific property, it retains the authority to levy upon that property at a later date or, as in the present case, to enforce a lien upon the property through a subsequent civil action.  See, e.g., Stewart Title and Trust of Phoenix v. Ordean, 528 F.2d 894, 898 (9th Cir. 1976); KPMG Peat Marwick v. Texas Commerce Bank, 976 F. Supp. 623, 630 (S.D. Tex.

---

[15]  There is no evidence in the record -- and the Tempelmans have not argued -- that the IRS issued either a certificate of release (extinguishing any of the liens) or a certificate of discharge (discharging the Maple Street property from the liens) in this case.

1997), <u>reconsideration denied by</u> No. CIV. A. H-96-1512, 1997 WL 289137 (S.D. Tex. May 20, 1997); <u>Florida Land Title Co. v. Martinez</u>, No. 93-1779-CIV-T-17C, 1995 WL 644217, at *9 (M.D. Fla. Aug. 25, 1995); <u>United States v. Hoffman</u>, 643 F. Supp. 346, 349-50 (E.D. Wis. 1986). As these opinions indicate, this conclusion follows directly from the language of the Internal Revenue Code: § 6343(a)(3) provides that release of a levy "shall not operate to prevent any subsequent levy," 26 U.S.C.A. § 6343(a)(3), and § 7403(a) authorizes the filing of a lien enforcement suit "whether or not levy has been made." 26 U.S.C.A. § 7403(a). Accordingly, I conclude that the present suit is not barred or precluded by the government's levy upon the Maple Street property or its release of that levy.

**B.   The Putative Transfer to the Fellowship**

The Tempelmans argue in their objection that they transferred the Maple Street property to the Fellowship of Perfect Liberty on August 12, 1998 and that the Fellowship took the property free from the government's tax liens. I reject this

argument.  Because the liens attached to the property and notices of the liens were properly filed prior to the date of the putative transfer, the government may enforce the liens against the property regardless of whether the transfer to the Fellowship was a valid gift or a fraudulent conveyance.[16]

The Internal Revenue Code provides that a tax lien on real property is not valid as against any purchaser until notice has been properly filed in the one office designated for such filings under state law, or, if state law does not designate such an office, with the clerk of the appropriate federal district court. See 26 U.S.C.A. §§ 6323(a), (f)(1)(A), (f)(1)(B) (West 1989 & Supp. 1999).  The code defines a purchaser as "a person who, for adequate and full consideration in money or money's worth, acquires an interest . . . in property which is valid under local law against subsequent purchasers without actual notice."  26 U.S.C.A. § 6323(h)(6) (West 1989 & Supp. 1999).  Accordingly, to

---

[16]  In its complaint, the government asked this court to set aside as fraudulent the Tempelmans' transfer of the Maple Street property to the Fellowship.  See Compl. (Doc. #1) at 1, 4. Because, as explained in the text, I need not resolve this issue to conclude that the government may enforce its liens against the Maple Street property, I decline to do so.

take real property burdened by a federal tax lien free from that lien, a transferee must both (1) acquire the property before notice of the lien is properly filed, and (2) pay adequate and full consideration for the property.

In this case, I need not determine whether purported transfer of the Maple Street property to the Fellowship was a valid gift or a fraudulent conveyance, because the record clearly demonstrates that prior to the date of the purported transfer, all of the tax liens in question attached to the property and notices of the liens were filed in the Hillsborough County Registry of Deeds.  See Pl.'s Mot. for Summ. J. (Doc. #22), Exs. 3, 4, 5, 6, 7, 8, 9.[17]  The Tempelmans have acknowledged that they owned the property when the liens attached and the notices were filed.  See id., Ex. 1 at 8, 21-24.  Thus, even if the transfer was valid, the Fellowship took the property subject to the government's liens.[18]  See Rodgers, 461 U.S. at 691 n.16 ("Of

---

[17]  The parties have not disputed whether the Hillsborough County Registry of Deeds was the proper office for such a filing, nor have they addressed whether the indexing requirements under 26 U.S.C.A. § 6323(f)(4) (West 1989 & Supp. 1999) apply or were satisfied in this case.  Accordingly, I assume that the filing in the Hillsborough County Registry of Deeds constituted a proper filing under §§ 6323(a) & (f).

[18]  Because it is undisputed that the Tempelmans owned the Maple Street property when federal tax liens attached and were filed, I need not engage in a state law analysis of their rights in the property.  See Drye v. United States, 120 S.Ct. 474, 481

course, once a lien has attached to an interest in property, the lien cannot be extinguished (assuming proper filing and the like) simply by a transfer or conveyance of the property."); <u>United States v. Bess</u>, 357 U.S. 51, 57 (1958) ("The transfer of property subsequent to the attachment of the lien does not affect the lien, for 'it is of the very nature and essence of a lien, that no matter into whose hands the property goers, it passes cum onere . . . .'"); <u>Rodriquez v. Escambron Development Corp.</u>, 740 F.2d 92, 93 (1st Cir. 1984) ("Under federal law, a federal tax lien continues to encumber land, even after the legal transfer of the land."); <u>Hanafy v. United States</u>, 991 F. Supp. 794, 800 (N.D. Tex. 1998) (concluding that plaintiff who purchased real property after notice of federal tax lien was properly filed took property subject to the lien); <u>Burbano v. United States</u>, 723 F. Supp. 193, 195 (E.D.N.Y. 1989) (same). Accordingly, the government may foreclose the liens regardless of whether the Tempelmans or the Fellowship currently owns the property.[19]

_____

(1999) ("We look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation."); <u>United States v. National Bank of Commerce</u>, 472 U.S. 713, 722 (1985) (same) (citing cases).

[19] I note also that the Fellowship has not properly appeared in and defended against this action. While Andrew

## C.    **The Tax Court Decision**

The Tempelmans suggest that the assessments of their tax liability for 1983, 1984, and 1985 are invalid because they flowed from a Tax Court decision tainted by coercion and/or duress.  Specifically, the Tempelmans maintain that the October 4, 1991 stipulated agreement between them and the Commissioner of the IRS, which was adopted by Tax Court in its November 27, 1991 decision, was obtained by "intimidation, coercion, unfair advantage, [and] collusion."  Defs.' Obj. (Doc. #24) ¶ 6.  In support of this contention, the Tempelmans have presented what they characterize as new evidence, in the form of analyses by independent accountants, that purports to show that the assessments of their 1983, 1984, and 1985 tax liabilities were erroneous.  See id. ¶ 6, Ex. 1.

Even assuming (but not deciding) that the Tempelmans could launch this collateral attack on the Tax Court's ruling as a

Tempelman purported to answer the government's complaint both for himself and for the Fellowship as "Founding Pastor," see Answer (Doc. #8) at 8, Tempelman is not an attorney and therefore may not appear on behalf of an independent entity or organization. See United States v. Kitsos, 770 F. Supp. 1230, 1231 n.3, 1232 n.6 (N.D. Ill. 1991), aff'd, 968 F.2d 1219, No. 91-2763, 1992 WL 164290 (7th Cir. July 16, 1992) (table; text available on Westlaw); In re Victor Publishers, Inc., 545 F.2d 285, 286 (1st Cir. 1976) (corporation); MOVE Organization v. United States Dep't of Justice, 555 F. Supp. 684, 693 & nn.32, 33 (E.D. Pa. 1983).

defense to the present action,[20] they have failed to substantiate their allegations of coercion and/or duress. The "new evidence" that the Tempelmans append to their brief purportedly relates to the actual amounts of the Tempelmans' tax liabilities for 1983, 1984, and 1985; it is not relevant to whether the stipulated agreement, upon which the Tax Court decision and resulting assessments for those years were based, was obtained through fair or foul means. Accordingly, the Tempelmans' attack on the stipulated agreement fails for lack of evidence.

## D. The 1990 Assessment

Finally, the Tempelmans contest the accuracy of the assessment of their tax liability for 1990 and maintain that they did not receive notice of that assessment. For the reasons set forth below, I conclude that the Tempelmans have failed to create

---

[20] If the Tempelmans actually had newly discovered evidence relevant to the means by which the stipulated agreement was reached, their proper course of action was either (1) to present that evidence to the Tax Court in a motion for reconsideration or a motion to vacate or revise its decision; or (2) to appeal that court's decision. See Tax Court Rules 161, 162, 190. In a subsequent related action, the First Circuit noted that the Tempelmans "never filed a motion for reconsideration or a motion to vacate or revise" the Tax Court's decision. Tempelman v. United States, 995 F.2d 1061, No. 92-2280, 1993 WL 190882, at *2 (1st Cir. June 3, 1993) (table; text available on Westlaw). In the same decision, the First Circuit noted that the Tempelmans appealed the Tax Court's decision, but that the appeal was dismissed as untimely filed. See id. at *1. The First Circuit also noted that the Tempelmans' claims of coercion or duress are "at the very least, far-fetched." Id. at *2.

a genuine factual issue material to the 1990 assessment.

When the government brings an action to enforce an assessment of tax liability under 26 U.S.C. § 7403, the defendant taxpayer may contest the merits of the assessment.  See <u>United States v. O'Connor</u>, 291 F.2d 520, 526-27 (2d Cir. 1961); <u>United States v. Mauro</u>, 243 F. Supp. 413, 415 (S.D.N.Y. 1965).  However, because the IRS's production of a Form 4340 creates a presumption that the listed assessment is correct, the taxpayer bears the burden of proving by a preponderance of the evidence that the assessment was erroneous.  See <u>Helvering v. Taylor</u>, 293 U.S. 507, 515 (1935); <u>Avco Delta Corp. Canada Ltd. v. United States</u>, 540

F.2d 258, 262 (7th Cir. 1976); <u>United States v. Rexach</u>, 482 F.2d 10, 17 (1st Cir. 1973); <u>Psaty v. United States</u>, 442 F.2d 1154, 1159-60 (3d Cir. 1971); <u>United States v. Strebler</u>, 313 F.2d 402, 403-04 (8th Cir. 1963); <u>United States v. Klimek</u>, 952 F. Supp. 1100, 1110-111 (E.D. Pa. 1997); <u>Mauro</u>, 243 F. Supp. at 415. The taxpayer's general denial of liability is not sufficient to carry this burden. <u>See</u> <u>Avco Delta Corp.</u>, 540 F.2d at 262.

As noted previously, the government has produced a Form 4340 that lists the assessments made against the Tempelmans for tax year 1990. According to that form, the Tempelmans were assessed $5505.26 on March 3, 1993 and $4236.00 on September 26, 1994, for a total assessment of $9741.26. <u>See</u> Pl.'s Mot. for Summ. J. (Doc. #22), Ex. 7 at 1.

The IRS evidently took these figures from tax forms filed by the Tempelmans. On August 9, 1994, the Templemans filed a Form 1040X that listed an originally reported tax liability of $5505 and a corrected tax liability of $9741, representing an increase of $4236. <u>See</u> <u>id.</u>, Ex. 1 to Ex. 1. The Form 1040X, which the government has submitted as an attachment to the Tempelmans' deposition, appears to be signed by Andrew Tempelman and by

"Priscilla J. Tempelman by Michael Asselin with POA [power of attorney]."[21] Id. During the Tempelmans' deposition, Andrew Tempelman testified that he had "absolutely no recollection of ever seeing [the Form 1040X] before." Id. at 12. At the same time, however, he acknowledged that it was "definitely [his] signature" that appears on the form. Id. at 15. Priscilla Tempelman testified that she did not recall giving Michael Asselin a power of attorney, but also stated that she may have done so or probably did so. See id. at 31-32.

The Tempelmans' lapses in memory do not create a genuine dispute of material fact regarding the accuracy or validity of the 1990 assessment. Andrew Tempelman acknowledged that the signature on the Form 1040X was "definitely" his. Id. at 15. His subsequent desire to "revoke" his signature, id. at 13, does not change this fact. Moreover, while the Tempelmans attempt to cast doubt on the authenticity of the Form 1040X, they have not asserted -- let alone produced any evidence to show -- that the

---

[21] Michael Asselin is an accountant whom the Tempelmans employed to assist them in determining their tax liability for various years. See Pl.'s Mot. for Summ. J. (Doc. #22), Ex. 1 at 12-14.

amount of tax liability reported on the form and accepted by the IRS was inaccurate. At most, the Tempelmans' deposition testimony can be construed as an unsupported denial of liability. Accordingly, because the assessments listed on the IRS's Form 4340 are presumptively correct and the Tempelmans have not carried their burden of rebutting that presumption, I conclude as a matter of law that the assessments for 1990 were accurate.

The Tempelmans also claim that they never received notice of the 1990 assessments. However, the Form 4340 for tax year 1990 lists "First Notice" (or "23C") dates, see Pl.'s Mot. for Summ. J. (Doc. #22), Ex. 7 at 1, which create a presumption that the requisite notices were given and demands for payment made. See Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993); Gentry v. United States, 962 F.2d 555, 557-58 (6th Cir. 1992); Geiselman v. United States, 961 F.2d 1, 6 (1st Cir. 1992) (per curiam). Because the Tempelmans offer no evidence to rebut that presumption, I conclude that the IRS gave notice and made demand for payment as required. Furthermore, because the Tempelmans have not fully paid the amount assessed, see Pl.'s Mot. for Summ. J. (Doc. #22), Exs. 6, 7, I conclude that a federal tax lien

based on the 1990 assessment arose and attached to the Maple Street property as of the date of the assessment. See 26 U.S.C.A. § 6321.

Finally, the Tempelmans have appended to their brief a barely legible photocopy of a letter they received from the IRS, which purports to show that they made payments or received credits of $7888 toward their 1990 tax liability. See Defs.' Obj. (Doc. #24) ¶ 33, Ex. 3. This evidence is essentially consistent with the IRS's Form 4340 for 1990, which lists a total of $7881.01 in payments and/or credits. See Pl.'s Mot. for Summ. J. (Doc. #22), Ex. 7 at 1. Accordingly, because the IRS has already taken these payments and/or credits into account in calculating the Tempelmans' outstanding liability for 1990, the letter lends no aid to the Tempelmans' cause.

## IV. CONCLUSION

For the reasons set forth above, I conclude that the Tempelmans have failed to create any genuine issue of material fact in this case. Accordingly, the government's motion for summary judgment (Doc. #22) is granted in its entirety and the

Tempelmans' objection (Doc. #24) is denied. The government is entitled to a judgment against the Tempelmans for their unpaid tax liabilities for the years 1983, 1984, 1985, and 1990, which amount to a total of $163,229.09 plus interest from September 3, 1999. The government holds federal tax liens arising from the Tempelmans' unpaid tax liabilities for the same years, and the Maple Street property is subject to those liens. Upon a post-judgment motion filed by the government, this court will order that the government's tax liens be foreclosed by a sale of the property, free of the claims of all defendants to this action. The Clerk shall enter judgment accordingly.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

March 21, 2000

cc:   John Cardone, Esq.
      David Broderick, Esq.
      Andrew Templeman
      Priscilla Templeman